849 F.2d 328
 128 L.R.R.M. (BNA) 2695, 109 Lab.Cas. P 10,540
 LOCAL UNION 453 OF the INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL- CIO, an Unincorporated
Labor Union, Appellant,
v.
INDEPENDENT BROADCASTING COMPANY, Appellee.
LOCAL UNION 453 OF the INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL- CIO, an Unincorporated
Labor Union, Appellee,
v.
INDEPENDENT BROADCASTING COMPANY, Appellant.
 Nos. 87-1542, 87-1956.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1988.
Decided June 14, 1988.
Rehearing and Rehearing En Banc Denied Sept. 15, 1988.
 
 Benjamin J. Francka, Springfield, Mo., for Local Union 453.
 Paul W. King, Springfield, Mo., for IBC.
 Before HEANEY, BRIGHT and WOLLMAN, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 Local Union 453 of the International Brotherhood of Electrical Workers, AFL-CIO (the union) appeals the decision of the United States District Court for the Western District of Missouri denying the union's request to compel the Independent Broadcasting Company (IBC) to arbitrate a series of grievances. The grievances arise in connection with the alleged replacement of three employees during a strike in November of 1985. IBC seeks attorney's fees from the union in connection with the filing of this action. We reverse the district court and remand this case with directions to the district court to enter an order requiring IBC to arbitrate these grievances. We affirm the district court's decision denying attorney's fees.
 
 I. Factual Background
 
 2
 In 1982, the union and IBC entered into a collective bargaining agreement covering the period November 6, 1982, through November 5, 1985. This contract was extended by a special agreement to midnight, November 17, 1985. The extension agreement expired, however, without the parties agreeing to a new contract. The union then went on strike.
 
 
 3
 On or about November 21, 1985, the fourth day of the strike, with no collective bargaining agreement in force, IBC notified striking employees Jack Elliot (an announcer), Naomi Fulkerson (a program department secretary), and Robert Du Brul (a studio technician) by certified mail that they were to report to work on November 25. If they did not return to work, the letter continued, "the Station intends to exercise its right to hire a permanent replacement for you, if necessary." The workers did not return. Thereafter, unbeknownst to Elliot, Fulkerson, and Du Brul, IBC claims to have permanently replaced Elliot with Thomas Trtan, a new hire, at 7:00 p.m., November 25. Fulkerson was replaced with Fran Stansbury, an IBC employee outside the bargaining unit with less seniority, at 10:00 a.m., November 25. Du Brul was replaced with Darryll Lindsay, a new hire, at 5:27 p.m., November 25.
 
 
 4
 After nine days of striking, IBC and the union were close to securing a collective bargaining agreement. Late in the evening of November 25, 1985, the membership of the union was in the process of voting on the latest proposal by the IBC.
 
 
 5
 Section 13.1 of the proposed collective bargaining agreement provided:
 
 
 6
 For the purpose of determining seniority of service, each Staff Employee shall be credited with all continuous service as a Staff Employee at the Station prior to the execution date of this Agreement, including all times of paid sick leave. A Staff Employee's name shall be added to the seniority list following the completion of his probationary period, and his seniority date, for all purposes hereunder, shall be that of the original date of his continuous employment on a full-time basis. Attached hereto, and made a part hereof, is a seniority list which has been derived from the Employer's records, and certified as being accurate by the Union and each Staff Employee as of the execution date hereof.
 
 
 7
 Section 13.4(b) of the proposed agreement provided:
 
 
 8
 For the purposes of layoff and rehire, each category of Staff Employee shall have its own seniority list.
 
 
 9
 The seniority lists attached to the proposed agreement contained the names, classifications, and seniority dates of all persons in the collective bargaining unit covered by the agreement. The list, in relevant part, included the following:
 
 
 10
 NAME SENIORITY DATE
--------------------------------
ANNOUNCERS
Elliot, Jack 04/01/49
Trtan, Thomas 11/25/85
* * *
PROGRAM DEPARTMENT SECRETARIES
Fulkerson, Naomi 09/02/64
Stansbury, Fran 09/07/72
* * *
STUDIO TECHNICIANS
Du Brul, Bob 08/17/79
Lindsay, Darryll 11/25/85
 
 
 11
 Finally, the proposed contract contained a comprehensive arbitration clause subjecting all "disputes or grievances * * * as to the interpretation, application, or performance of a specific term of this agreement" to arbitration.
 
 
 12
 At approximately the same time the vote was taking place, V. Michael Shanks, business manager for the union, telephoned Paul W. King, attorney for IBC, to ask whether any employees had been permanently replaced. Initially, King informed Shanks that he did not know whether there had been any replacements. King later informed Shanks that there had been replacements, but he did not know specifically who had been replaced. Shanks communicated this information to the employees present at the ratification vote in an effort to find out who may have lost their positions. Most of those employees present expressed the opinion that they themselves were the ones who had been permanently replaced.
 
 
 13
 At approximately 9:00 p.m. on November 25, 1985, the membership gave final approval to the proposed collective bargaining agreement. This agreement covered the period November 26, 1985, through November 25, 1988, and included the provisions and the seniority list discussed above.[1]
 
 
 14
 On November 26, 1985, both Elliot and Fulkerson attempted to return to their jobs but were turned back after being informed they had been permanently replaced the day before. On December 3, 1985, Du Brul, who had been on an IBC approved vacation, attempted to report to his job and was also turned back. According to the union, this was the first time any of these workers knew for certain that the IBC had attempted to replace them. On November 27, 1985, Elliot and Fulkerson both filed a grievance which claimed various violations of the new collective bargaining agreement. Among other contentions, they protested the assignment of their jobs to employees with less seniority. On December 3, 1985, Du Brul filed a similar grievance. The union, after investigation, determined the grievances had merit and proceeded to process them. IBC denied the grievances, claiming that the employees had been properly replaced. When the IBC refused to arbitrate, the union brought an action in district court seeking to compel arbitration. IBC moved for summary judgment, which the district court granted. The district court based its decision on the finding that there was no contract in effect when the dispute arose and therefore no arbitration provision to govern its resolution. The court further emphasized the right of employers to permanently replace economic strikers.
 
 II. Discussion
 A. The Union's Right to Arbitration
 
 15
 The union argues that the present dispute centers on interpretation of the November 25, 1985 collective bargaining agreement. It points out that section 13.1 of the agreement provides that seniority shall be measured from the time the employee began work for the employer. Second, attached to the agreement was a seniority list which included the names of Elliot, Fulkerson, and Du Brul (the grievants IBC attempted to replace during the economic strike). The union further contends that section 13.4 of the agreement states that employees shall be rehired in order of seniority. Thus, the union maintains, these specific contractual provisions, together with the basic confusion at the time the agreement was ratified concerning (1) whether there had in fact been permanent replacement of workers, (2) if so, who had been replaced, and (3) what IBC's intent was in terms of reinstatement in the new agreement, raise vital questions concerning the meaning of the collective bargaining agreement.
 
 
 16
 The union argues that, given the foregoing, it is not entirely clear that Elliot, Fulkerson, and Du Brul had been permanently replaced at the time the contract was ratified. The union also maintains that when IBC entered into the collective bargaining agreement which assigned jobs on the basis of seniority and included the seniority list discussed above, IBC agreed to assign (or reassign) the jobs to Elliot, Fulkerson, and Du Brul.
 
 
 17
 IBC, on the other hand, asserts that the grievants were economic strikers and were properly and permanently replaced under the terms of NLRB v. MacKay Radio & Tel. Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). Further, they argue, the replacements occurred when there was no collective bargaining agreement in force, and thus the new agreement applies to Elliot, Fulkerson and Du Brul only in terms of rehire should positions become available in the future. Finally, IBC contests the union's interpretation of the seniority list containing the names of the grievants, maintaining it was included in the collective bargaining agreement only to take into account the replaced employees' relative seniority should vacancies in their respective job categories occur.
 
 
 18
 In Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960), the Supreme Court held:
 
 
 19
 An order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.
 
 
 20
 The Court recently supplemented this basic principle in AT & T Technologies v. Communication Workers of America, 475 U.S. 643, 649-50, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986) (citation omitted), stating:
 
 
 21
 [I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.
 
 
 22
 Given the union's contentions concerning the arbitration clause, the seniority clause, and the rehire clause, both parties' arguments concerning the meaning of the seniority list, and the confusion surrounding the formation of the contract, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." In this regard, we find the parties' competing interpretations of the meaning of the seniority list a particularly strong indication that arbitration is appropriate here. Further, the Supreme Court has mandated that any doubts clearly are to be "resolved in favor of coverage." Our duty thus being unmistakably clear, we remand this case for arbitration without passing in any respect on the merits of the underlying dispute.
 
 B. Attorney's Fees
 
 23
 IBC asserts that in filing the present action on behalf of the grievants, the union "multiplied proceedings unreasonably and vexatiously in a case that should never have been filed." IBC therefore requests attorney's fees. The district court denied this request below. Because we believe that the union was correct in asserting its right to arbitrate, we also deny this request.
 
 III. Conclusion
 
 24
 We find the foregoing dispute concerning the November 25, 1985 collective bargaining agreement susceptible to arbitration and remand the matter to the district court with directions to enter an order compelling IBC to arbitrate. We further deny IBC's request for attorney's fees in connection with this case. The decision of the district court is therefore reversed in part and affirmed in part.
 
 
 
 [1]
 The agreement was subsequently reduced to writing and signed on February 6, 1986